**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| ASTROPOWER LIQUIDATING TRUST, f/k/a ASTROPOWER, INC., | ) Case No. 04-10322(MFW) |
| Debtor. | ) |
| | ) |
| ASTROPOWER LIQUIDATING TRUST, f/k/a ASTROPOWER, INC., | ) |
| Plaintiff, | ) |
| v. | ) Adversary No. 05-50867 |
| XANTREX TECHNOLOGY, INC.; MOSSADIQ S. UMEDALY; and RAYMOND JAMES LTD., | ) |
| Defendants. | ) |

**<u>OPINION</u>**[1]

Before the Court are (1) the Motion of Raymond James Ltd. ("RJL") to Dismiss Complaint for Lack of Personal and Subject Matter Jurisdiction and Improper Venue, or in the Alternative to Dismiss Counts I, II and IV and Abstain; and (2) the Motion of Xantrex, Inc. ("Xantrex") and Mossadiq S. Umedaly ("Umedaly") to (A) Dismiss the Complaint for Insufficient Service of Process; (B) Dismiss the Complaint for Lack of Personal Jurisdiction with

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Fed. R. Bankr. P. 7052.

1

Respect to Defendant Umedaly; (C) Abstain Pursuant to 28 U.S.C. §
1334; (D) in the Alternative, to Dismiss or Stay this Action to
Enforce the Arbitration Provisions; or (E) Dismiss this Action
Based on Forum Non Conveniens.  For the reasons stated below, the
Court will grant the motions in part and deny them in part.


I.    BACKGROUND

        AstroPower, Inc. (the "Debtor") filed a petition under
chapter 11 on February 1, 2004.  On December 3, 2004, the Court
entered an order confirming the Revised Liquidating Plan proposed
by the Debtor and the Official Committee of Unsecured Creditors
(the "Plan").  Under the Plan, all the Debtor's assets, including
causes of action, vested in the AstroPower Liquidating Trust (the
"Plaintiff").

        Xantrex is a Canadian corporation headquartered in Burnaby,
British Columbia.  Umedaly, a Canadian citizen, was a
shareholder, the Chief Executive Officer, a Director, and the
Chairman of the Board of Xantrex at all times relevant to this
action.  RJL is a Canadian corporation with principal offices in
Vancouver, British Columbia.

        On May 11, 2005, the Plaintiff filed an eleven-count
complaint (the "Complaint").  The dispute arises from the
Debtor's pre-petition sale of its Xantrex stock, with the help of
the Defendants, for a price substantially less than the release

2

price of Xantrex stock just two months later in an initial public
offering ("IPO").  Counts I-IV[2] (fraudulent transfer), VI
(misrepresentation), XI (unjust enrichment) and XII (constructive
trust) of the Complaint are directed against all Defendants.
Count V seeks to disallow Xantrex's claim against the estate
pursuant to section 502(d) of the Bankruptcy Code.  Count VII
alleges breach of fiduciary duty, agency, and contract against
Xantrex arising from its shareholders' agreement (the
"Shareholders' Agreement").  Counts VIII and X allege breaches of
contract, fiduciary duty, and agency against RJL arising from its
agreement to act as the Debtor's agent for the sale of the
Xantrex stock.  Count IX alleges breach of fiduciary duty against
Xantrex and Umedaly based upon a purported special relationship
of trust and confidence with the Debtor.  In addition to
disallowance of Xantrex's claim, the Complaint seeks damages of
approximately $1.3 million.

Xantrex and Umedaly filed an answer to the Complaint on June
10, 2005, denying the allegations and asserting various
affirmative defenses, including lack of personal jurisdiction.
In lieu of an answer, RJL filed a motion on June 30, 2005,
seeking dismissal or abstention.  Xantrex and Umedaly filed a
joint motion on July 1, 2005, seeking dismissal, abstention or a
stay of these proceedings pending arbitration.  On motion of the

---

[2]  There is no Count III in the Complaint.

Defendants the Court entered orders on August 11, 2005, staying
discovery pending resolution of the instant Motions.  The Court
heard oral argument on the Motions on September 27, 2005.  After
extensive briefing by the parties, this matter is now ripe for
decision.

II.  DISCUSSION

    A.  Personal Jurisdiction

    RJL and Umedaly move to dismiss the Complaint for lack of
personal jurisdiction.[3]  See Fed. R. Civ. P. 12(b)(2).  In
support of their motions, both filed affidavits to rebut several
of the factual allegations in the Complaint and to establish that
they lack sufficient contacts with the United States and Delaware
to support the exercise of in personam jurisdiction here.  In
response, the Plaintiff filed an affidavit of the Debtor's former
in-house counsel, Christopher A. Gallo, to corroborate the
relevant allegations in the Complaint.

    1.  Standard on Rule 12(b)(2) Motion to Dismiss

    The Plaintiff contends that the Court "must accept as true
all allegations of jurisdictional fact made by the [P]laintiff
and resolve all factual disputes in [its] favor."  CC Investors

---

[3]  The Xantrex/Umedaly motion does not challenge personal
jurisdiction over Xantrex.  Accordingly, the Court declines
Xantrex's invitation, both in its reply brief and at oral
argument, to decide that issue now.

Corp. v. Raytheon Co., 219 F.R.D. 328, 329 (D. Del. 2003) (citing

Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir.

2002)).  According to the Plaintiff, it need only allege a prima

facie case that "minimum contacts" exist; the burden then shifts

to RJL and Umedaly to "present a compelling case that the

presence of some other considerations would render jurisdiction

unreasonable."  Grand Entm't Group, Ltd. v. Star Media Sales,

Inc., 988 F.2d 476, 483 (3d Cir. 1993).

        RJL disagrees and insists that the Plaintiff is not entitled

to the same indulgence on a Rule 12(b)(2) motion as it enjoys on

a Rule 12(b)(6) motion for failure to state a claim.  According

to RJL, the Plaintiff must establish that personal jurisdiction

is in fact proper, not merely that it would be proper on some set

of provable facts.  See Harman Auto, Inc. v. Barrincorp Indus.,

Inc. (In re Harvard Indus., Inc.), 173 B.R. 82, 85 (Bankr. D.

Del. 1994) ("Where personal jurisdiction is challenged in a

motion to dismiss, the plaintiff must do more than submit written

materials that create issues of material fact.").

        RJL is not entirely correct.  It is true that, once a

defendant raises the defense of lack of personal jurisdiction,

the plaintiff may no longer rest upon the allegations in its

complaint.  Stranahan Gear Co. v. NL Indus., 800 F.2d 53, 58 (3d

Cir. 1986).  It is also true that to overcome the defense the

plaintiff must (eventually) prove, by a preponderance of the

evidence, facts sufficient to establish personal jurisdiction. Cateret Savings Bank, F.A. v. Shushan, 954 F.2d 141, 147 (3d. Cir. 1992).  But RJL and Umedaly cite no authority for the proposition that a pre-answer (in the case of RJL), pre-discovery, pre-trial motion is the appropriate vehicle to hold the Plaintiff to its ultimate burden of persuasion on an essential element of its case.  See, e.g., Oxford First Corp. v. PNC Liquidating Corp., 372 F. Supp. 191, 193 ("[T]he jurisdictional facts in the instant case are so inextricably intertwined with the facts necessary to prove ultimate liability that it would be unfair to dismiss for lack of personal jurisdiction at this preliminary stage.").  "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).  The Court did not hold an evidentiary hearing in connection with RJL's and Umedaly's motions.  Accordingly, it will base its conclusion on jurisdiction solely upon the Complaint and the Gallo affidavit and will consider RJL's and Umedaly's affidavits only for extraordinary circumstances that would render jurisdiction unreasonable.  See Grand Entm't, 988 F.2d at 483.

     2.  Personal Jurisdiction in Bankruptcy Court

The Plaintiff argues that the Delaware long-arm statute
provides the basis for personal jurisdiction over RJL and
Umedaly.  See 10 Del. C. § 3104.  This is incorrect.

Personal jurisdiction in bankruptcy court is governed by
Rule 7004(f), which provides:

> If the exercise of jurisdiction is consistent with the
> Constitution and laws of the United States, serving a
> summons or filing a waiver of service in accordance
> with this rule or the subdivisions of Rule 4 F.R.Civ.P.
> made applicable by these rules is effective to
> establish personal jurisdiction over the person of any
> defendant with respect to a case under the Code or a
> civil proceeding arising under the Code, or arising in
> or related to a case under the Code.

Fed. R. Bankr. P. 7004(f).  Rule 4(k)(1)(A) of the Federal Rules
of Civil Procedure generally limits the in personam jurisdiction
of the federal courts over non-resident defendants to that of a
court of general jurisdiction in the forum state.  However, this
limitation does not apply where extra-territorial service of
process is "authorized by a statute of the United States."  Fed.
R. Civ. P. 4(k)(1)(D).  Bankruptcy Rule 7004(d), which allows
nationwide service of process in bankruptcy cases, is just such a
statute.  Nordberg v. Granfinanciera, S.A. (In re Chase & Sanborn
Corp.), 835 F.2d 1341, 1344 (11th Cir. 1988) ("Bankruptcy Rule
7004(d) provides for nationwide service of process and thus is
the statutory basis for personal jurisdiction in this case. . .
."), rev'd on other grounds, 492 U.S. 33 (1989).  Accordingly,
the Court need not look to the Delaware long-arm statute, or the

7

case law interpreting it, to determine whether it has personal
jurisdiction over RJL and Umedaly.

The Fifth Amendment Due Process Clause, however,
circumscribes the in personam jurisdiction of the federal courts.
Chase & Sanborn, 835 F.2d at 1344.  It imposes "a general
fairness test incorporating International Shoe's requirement that
certain minimum contacts exist between the non-resident defendant
and the forum such that maintenance of the suit does not offend
traditional notions of fair play and substantial justice."  Max
Daetwyler Corp. v. Meyer, 762 F.2d 290, 293 (3d Cir. 1985)
(quotations omitted) (citing International Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)).  However, in bankruptcy
cases "the forum" is the United States in general, not the
particular forum state.  Klingher v. Salci (In re Tandycrafts,
Inc.), 317 B.R. 287, 289 (Bankr. D. Del. 2004).  Accordingly, the
Court will apply a "national contacts" standard, and not merely a
"Delaware contacts" standard, in determining whether the Court's
exercise of in personam jurisdiction over RJL and Umedaly is
proper.  Id.

3.   Minimum Contacts

Where a defendant "purposefully directed his activities at
residents of the forum," his contacts with the forum are
sufficient to support personal jurisdiction in any "litigation
[that] results from alleged injuries that arise out of or relate

8

to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotations omitted). A single transaction with the forum plaintiff will suffice. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). The defendant's activity need not take place within the forum so long as it is "intentional conduct . . . calculated to cause injury" to the plaintiff within the forum. Calder v. Jones, 465 U.S. 783, 791 (1984). See also Burger King, 471 U.S. at 476 ("[W]e have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . .").

     a.  RJL

According to the Complaint and the Gallo Affidavit, RJL sent the Debtor a proposed engagement letter (the "Engagement Letter") on August 7, 2003, offering to act as the Debtor's agent to sell its Xantrex stock. In the letter, RJL sought authority to sell the stock for $1.44 per share, less RJL's commission. After several communications with Gallo, RJL sent a proposed agency agreement (the "Agency Agreement") on August 13, 2003, wherein it promised to use its "best efforts" and "full resources" to sell the Xantrex stock. The Debtor executed the Agency Agreement on August 25, 2003. RJL promised "to market the Xantrex [stock] to institutional investors in . . . the United States," and RJL later represented that it had made "significant efforts to market" the stock as agreed. On August 29, 2003, a potential

9

buyer offered to purchase the Debtor's Xantrex stock for $1.50 per share.  RJL, acting as principal, matched this offer.  On September 22, 2003, RJL, as principal and in conjunction with another potential buyer, increased its offer to $1.55 per share and agreed to waive any commission from the sale.  The Debtor accepted this offer subject to the right-of-first-refusal ("ROFR") process in the Xantrex Shareholders' Agreement.

Pursuant to the Shareholders' Agreement, the Debtor submitted an offer letter to Xantrex for distribution to its major shareholders.  An undisclosed third party accepted the offer, and, per Xantrex's instructions, the Debtor transferred the stock to Xantrex without identifying a transferee.  On December 17, 2003, the Debtor received payment for the stock from Xantrex.  Xantrex subsequently effected a one-for-four reverse stock split and, on February 6, 2004, filed a prospectus publicly announcing its decision to issue an IPO, with RJL as an underwriter.  The Xantrex IPO was released to the market at $13.50 per share, more than twice the highest value offered by RJL for the Debtor's stock.[4]

The Plaintiff alleges the following bases for specific jurisdiction: (1) RJL purposefully directed its activities toward the United States by contracting to perform services in the United States as agent for a Delaware corporation, and the

---

[4]  Adjusting for the reverse stock split, RJL's highest offer was equivalent to $6.20 per share ($1.55 per share x 4 shares).

related communications (primarily letters sent via post and facsimile) were addressed to and received by the Debtor in the United States; (2) RJL transacted business in the United States when it offered to purchase the Debtor's Xantrex stock for its own account; and (3) RJL intentionally caused injury to the Debtor in the United States by deliberately violating its duties as agent and fiduciary, and breaching both its express contractual duty to use its "best efforts" to maximize value for the Debtor and its implied contractual duty of good faith and fair dealing.

RJL denies that it has any contacts with the United States that could subject it to personal jurisdiction in this Court, because it is a Canadian company with no operations or assets within the United States.  RJL disputes the Plaintiff's characterization that services were performed or business transacted "in" Delaware, and cites several cases for the proposition that informational communications, preliminary contract negotiations, and entry into a contractual relationship with a forum resident are all insufficient to establish the minimum contacts necessary to support specific personal jurisdiction.  See, e.g., Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 32 (3d Cir. 1993); McElroy v. Yokota Cycle Co., No. 92-4517, 1993 WL 89734, at *2 (E.D. Pa. Mar. 26, 1993);

11

Chicosky v. Presbyterian Med. Ctr., 979 F. Supp. 316, 319 (D.N.J. 1997).

RJL's argument is unavailing.  Whether RJL's actions took place "in" Delaware or "in" Canada, though outcome-determinative under the Delaware long-arm statute, is not so under the Fifth Amendment minimum-contacts analysis.  Compare Ohrstrom v. Harris Trust Co. of N.Y., No. 15709, 1998 WL 8849, at *3 (Del. Ch. Jan. 8, 1998) (finding no basis for personal jurisdiction under Delaware long-arm statute where none of defendant's activities took place "in" Delaware) with Calder, 465 U.S. at 789 ("Jurisdiction over petitioners is . . . proper in California based on the 'effects' of their Florida conduct in California.").

The cases cited by RJL all involve negligence actions against non-resident defendants.  Sunbelt, 5 F.3d at 32; McElroy, 1993 WL 89734, at *2; Chicosky, 979 F. Supp. at 319.  They did not address the question of intentional conduct calculated to cause injury within the forum.  See, e.g., Calder, 465 U.S. at 791.

RJL asserts that it did not cause any injury to the Debtor or its creditors because it never consummated the purchase of the Xantrex stock.  This argument, however, speaks to the merits of the Plaintiff's claims rather than the sufficiency of the Plaintiff's allegations.  The Complaint and the Gallo Affidavit allege intentional conduct and a resulting injury, which is

12

sufficient to establish a prima facie case for <u>in personam</u> jurisdiction.  <u>See</u> <u>Calder</u>, 465 U.S. at 790.

RJL argues finally that a forum selection clause in the Engagement Letter, which establishes British Columbia as the exclusive venue for any litigation, defeats personal jurisdiction because it shows that RJL did not "purposefully avail" itself of the privileges of doing business in the United States or of the protections of United States law.  <u>See</u> <u>Burger King</u>, 471 U.S. at 479 (holding that where contacts are based on a contract, the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum"); <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (holding that when a defendant "purposefully avails" itself of the forum's privileges it "has clear notice that it is subject to suit there").

This argument is misplaced.  It is true that a valid forum selection clause is sufficient to <u>establish</u> personal jurisdiction over a defendant who otherwise lacks contacts with the forum.  <u>See</u> <u>Burger King</u>, 471 U.S. at 473 n.14 ("[B]ecause the personal jurisdiction requirement is a waivable right, there are a variety of legal arrangements by which a litigant may give express or implied consent to the personal jurisdiction of the court.").

13

But RJL does not explain why a forum selection clause, without more, would _negate_ personal jurisdiction where the defendant's actions are otherwise sufficient to establish minimum contacts with the forum.  Indeed, it appears from the cases that such a "defensive" use of a forum selection clause is a challenge to venue, not _in personam_ jurisdiction.  _See, e.g._, _Argueta v. Banco Mexicano, S.A._, 87 F.3d 320, 324 (9th Cir. 1996) (holding that a motion to dismiss based on a forum selection clause should be treated "as a Rule 12(b)(3) motion").  Accordingly, the Court concludes that the Plaintiff states a prima facie case for specific personal jurisdiction over RJL, but it will consider the forum selection clause in conjunction with RJL's challenge to venue.  _See infra_ Part II. D. 2.

> b.   _Umedaly_

According to the Complaint and the Gallo Affidavit, the Debtor, facing a cash crisis and seeking to liquidate its Xantrex investment, contacted Xantrex regarding a possible sale of the Debtor's Xantrex stock.  Umedaly responded personally to the Debtor's initial communication and offered to help value the stock and find a buyer.  In several subsequent communications Umedaly provided advice to the Debtor, promised to canvass Xantrex's major shareholders to find a buyer, and expressed his willingness to help maximize value for the Debtor.

The Plaintiff argues that Umedaly purposefully directed his activities toward the United States by establishing a special relationship of trust and confidence with the Debtor with respect to the sale of its Xantrex stock.  The Plaintiff argues further that Umedaly's failure to disclose the impending IPO or the "true" value of Xantrex's stock amounted to an intentional misrepresentation causing tortious injury to the Debtor in the United States.

Umedaly disputes the Plaintiff's factual allegations and claims that he did not initiate any communications with the Debtor.  Moreover, Umedaly argues, the "fiduciary shield doctrine" precludes personal jurisdiction over him because all his communications with the Debtor occurred in his capacity as a corporate officer of Xantrex and he received no remuneration for his alleged individual services.  See Marketing Prods. Mgmt., LLC v. Healthandbeautydirect.com, Inc., No. 02C-04-256 CLS, 2004 WL 249581, at *3 (Del. Super. Jan. 28, 2004).  Finally, Umedaly argues that any harm resulting from the sale of Xantrex stock occurred not in the United States, but in Canada, which was the legal situs of the stock.

These arguments are unpersuasive.  First, the Court must accept as true the Plaintiff's factual allegation that Umedaly initiated the communication with the Debtor.  Second, the fiduciary shield doctrine is a judicial gloss upon the Delaware

15

long-arm statute, which is irrelevant here.  Plummer & Co.
Realtors v. Crisafi, 533 A.2d 1242, 1246 (Del. Super. Ct. 1987)
(discussing genesis of fiduciary shield doctrine).  There appears
to be no federal constitutional counterpart to this doctrine.
See Calder, 465 U.S. at 790 ("[Defendants'] status as employees
does not somehow insulate them from jurisdiction.").

     Finally, the situs of stock is not relevant for
jurisdictional purposes.  If it were, then the vast majority of
securities lawsuits in the United States could be brought in
Delaware, a proposition expressly rejected by the Delaware
Chancery Court.  Ohrstrom, 1998 WL 8849, at *5 (holding that "the
fact that the situs of [the] stock is Delaware does not satisfy
the Constitution's minimum contacts standard").  Umedaly cites no
authority for the novel proposition that the legal situs of
stock, though unable to confer jurisdiction, may yet defeat it.

     To the extent that it alleges intentional misrepresentation
on the part of Umedaly, the Plaintiff states a prima facie case
for personal jurisdiction over Umedaly.  See Calder, 465 U.S. at
791; Grand Entm't, 988 F.2d at 483 ("[Spanish Defendant's]
personal, intentional communications gave rise to the underlying
suit.  He voluntarily decided to negotiate with [Pennsylvania
Plaintiff] and cannot now be heard to complain about answering to
a suit concerning the effect of [those] negotiations in
[Pennsylvania].").

                              16

4.   <u>Fair Play and Substantial Justice</u>

The Plaintiff having made a prima facie showing of minimum

contacts, the burden shifts to RJL and Umedaly to "present a

compelling case that the presence of some other considerations

would render jurisdiction unreasonable." <u>Grand Entm't</u>, 988 F.2d

at 483.  The burden on a defendant who wishes to show an absence

of fairness or lack of substantial justice is heavy.  <u>Id.</u>  To

decide whether RJL and Umedaly have made their case, the Court

must consider the following factors: (1) the burden on RJL and

Umedaly of litigating in the United States; (2) the interest of

the United States in adjudicating the dispute; (3) the

Plaintiff's interest in obtaining the relief sought; (4) the

interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared

interest of the several States in furthering fundamental

substantive social policies.[5]  <u>Id.</u>

RJL and Umedaly do not address these factors directly, other

than to recite the Supreme Court's admonition that "[t]he unique

burdens placed upon one who must defend oneself in a foreign

legal system should have significant weight in assessing the

reasonableness of stretching the long arm of personal

jurisdiction over national borders." <u>Asahi</u>, 480 U.S. at 114.  As

_____

[5]  The Court assumes that factors (4) and (5) in the present
context, of course, speak to the respective judiciaries and
shared substantive social policies of the United States and
Canada.

17

the Asahi Court noted, however, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Id.

RJL and Umedaly have not established that litigating in the United States would be especially burdensome to them; that the interest of the United States and the Plaintiff in adjudicating the latter's claims are not compelling; that the interests of efficient resolution of controversies require this litigation to proceed in Canada; or that substantive social policies would be furthered by dismissal of this case. As such, they have not carried their burden of showing that this Court's exercise of jurisdiction over them would be unreasonable. See Grand Entm't, 988 F.2d at 483 (finding jurisdiction over Spanish defendants reasonable in Pennsylvania forum).

In light of the foregoing, the Court will deny RJL's and Umedaly's requests to dismiss for want of personal jurisdiction.

B.   Insufficiency of Service of Process

Xantrex and Umedaly also move to dismiss the Complaint for insufficiency of service of process because the Plaintiff failed to comply with the requirements of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). See Fed. R. Civ. P. 4(f) & (h); 12(b)(5). They argue that under Rule 4 and

18

the Hague Convention, the Plaintiff had 120 days from the filing
of the Complaint to effectuate service upon them through Canada's
Central Authority, which it failed to do.

The Plaintiff argues that Xantrex and Umedaly waived this
defense by failing to raise it in their answer to the Complaint
or in a pre-answer Rule 12 motion.  Fed. R. Civ. P. 12(h);
McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 194 (3d
Cir. 1998); Government of V.I. v. Sun Island Car Rentals, Inc.,
819 F.2d 430, 433 (3d Cir. 1987).

Xantrex and Umedaly disagree.  They argue that Rule 12(h)
applies only to those defenses "then available" at the time of
the first defensive pleading.  In this case, they assert, the
Rule 12(b)(5) defense was not available when Xantrex and Umedaly
filed their Answer to the Complaint on June 10, 2005, because the
Plaintiff had until August 13 to effectuate service of process.
See Goodstein v. Bombardier Capital, Inc., 167 F.R.D. 662, 665
(D. Vt. 1996) (allowing Rule 12(b)(5) motion to go forward
because defense was not available at time of first responsive
pleading).  They argue further that there was no undue delay in
raising the issue because they filed their motion on July 1, just
21 days after the answer.

Xantrex and Umedaly prove too much.  Their Rule 12(b)(5)
defense was no more "available" when they filed their Motion than
when they filed their Answer because the Plaintiff still had more

19

than a month to serve them with process.  More importantly,
neither the text of Rule 12 nor the <u>Goodstein</u> case support their
position.  The defense of insufficiency of service of process "is
waived . . . if it is neither made by motion under this rule nor
included in a responsive pleading."  Fed. R. Civ. P. 12(h)(1).  A
Rule 12 motion must be brought "before pleading if a further
pleading is permitted."  Fed. R. Civ. P. 12(b).  Thus, after
Xantrex and Umedaly filed their Answer it was no longer possible
for them to bring a motion under Rule 12.  <u>See</u> <u>id.</u>

The "then available" language to which Xantrex and Umedaly
refer is from Rule 12(g), which requires parties, to the extent
possible, to consolidate all of their Rule 12 defenses into a
single motion.  Had Xantrex and Umedaly filed a pre-answer motion
to dismiss, and omitted therefrom the Rule 12(b)(5) defense which
was not "then available," Rule 12(h) might have permitted
amendment of their original motion to include it.  <u>See</u> <u>Goodstein</u>,
167 F.R.D. at 665.  Xantrex and Umedaly did not file a pre-answer
motion, however.  Accordingly, they waived their Rule 12(b)(5)
defense and are precluded from raising it now.  <u>McCurdy</u>, 157 F.3d
at 194; <u>Sun Island</u>, 819 F.2d at 433.  The Court will deny their
request to dismiss on this ground.

C.   <u>Subject Matter Jurisdiction</u>

In determining the nature and extent of its subject matter
jurisdiction, the Court must proceed through the Complaint on a

20

claim-by-claim basis.  Halper v. Halper, 164 F.3d 830, 837-39 (3d
Cir. 1999).  The parties concede that the Court has subject
matter jurisdiction over the fraudulent conveyance counts (I-IV)
and the count seeking disallowance of Xantrex's claim (V) because
they are core matters arising under the Bankruptcy Code.  11
U.S.C. §§ 502(d), 544, 548, 550; 28 U.S.C. § 157(b)(2)(B) & (H).
The Court's subject matter jurisdiction over the remaining
claims, however, is disputed.

## 1.    Core Jurisdiction

The Plaintiff argues that the other counts of the Complaint
are core proceedings over which this Court has subject matter
jurisdiction because they directly affect the administration of
the estate, liquidation of assets of the estate, and
implementation of the Debtor's liquidating Plan.  See 28 U.S.C. §
157(b)(2)(A) & (O).

RJL disagrees.  According to RJL, "core proceedings" are
limited to those which invoke a substantive right under the
Bankruptcy Code or which are, by their nature, capable of arising
only in the context of a bankruptcy case.  Halper, 164 F.3d at
836-37.  RJL insists that actions for pre-petition breach of
fiduciary duty and breach of contract, whether grounded in
Canadian or Delaware law,[6] do not fit this mold because they

---

[6]  The Complaint appears to apply Delaware substantive law, but
RJL asserts that the law of British Columbia is appropriate
pursuant to a choice-of-law provision in the Engagement Letter.

arise under non-bankruptcy law and would exist independent of the bankruptcy case.  See, e.g., Hatzel & Buehler, Inc. v. Orange & Rockland Utils., 107 B.R. 34, 39-40 (D. Del. 1989).

The Court agrees with RJL.  Other than the fraudulent transfer and claim disallowance counts, nothing in the Plaintiff's Complaint finds its genesis in either the Bankruptcy Code or this bankruptcy case.  As such, the Court concludes that the claims stated in Counts VI-XII are non-core.  See, e.g., Mellon v. Delaware & Hudson Ry. Co. (In re Delaware & Hudson Ry. Co.), 122 B.R. 887, 894-95 (D. Del. 1991) (holding that alleged declaration of unlawful dividends, waste and breach of fiduciary duty against shareholders and directors are not core); Official Comm. of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins (In re Integrated Health Services, Inc.), 291 B.R. 615, 618 (Bankr. D. Del. 2003) ("breach of fiduciary duty and waste of corporate assets are quintessential state law causes of action"); TTS, Inc. v. Stackfleth, 142 B.R. 96, 99 (Bankr. D. Del. 1992) (concluding that allegations of fraud, mismanagement, waste, diversion, misappropriation, self-dealing and breach of fiduciary duty are not core).

## 2.    "Related to" Jurisdiction

Plaintiff asserts nonetheless that this Court has "related to" jurisdiction over Counts VI-XII of the Complaint.  See 28 U.S.C. §§ 157(c)(1), 1334(b).  In general, bankruptcy courts may

exercise "related to" jurisdiction over non-core matters whose resolution "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). After confirmation of a chapter 11 plan, however, the scope of the bankruptcy court's "related to" jurisdiction diminishes. Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 164-65 (3d Cir. 2004). Because the bankruptcy estate no longer exists post-confirmation (and thus cannot logically be affected), a claim must have "a close nexus to the bankruptcy plan or proceeding" to support post-confirmation jurisdiction in the bankruptcy court. Id. at 166-67.

The Plaintiff argues that this Court has "related to" jurisdiction over the non-bankruptcy counts of the Complaint because (1) their determination could potentially increase the assets available for distribution to creditors and (2) their resolution has a close nexus with the Plan, which expressly contemplates this litigation. See Michaels v. World Color Press, Inc. (In re LGI, Inc.), 322 B.R. 95, 108 (Bankr. D.N.J. 2005) (finding that post-confirmation litigation of a pre-petition claim that was "contemplated by the Plan and part of the corpus of the [Plan-created] Trust, serves the 'implementation, consummation, [and] execution' of the Plan").

RJL argues that the Plaintiff cannot establish a close nexus between the non-bankruptcy counts and the administration, consummation or execution of the Plan in this case because the underlying causes of action did not arise "in connection" with the Plan and do not require construction or interpretation of the Plan for their resolution.  See Resorts, 372 F.3d at 167.  See also Shandler v. DLJ Merch. Banking, Inc. (In re Insilco Techs., Inc.), 330 B.R. 512, 525-26 (Bankr. D. Del. 2005) (finding no jurisdiction over pre-petition state law claims brought by liquidating trustee post-confirmation); Falise v. American Tobacco Co., 241 B.R. 48, 58 (holding that "the mere possibility of increasing the size of [a Plan-created] Trust's assets post-confirmation [was] insufficient to create [post-confirmation] jurisdiction"); Grimes v. Graue (In re Haws), 158 B.R. 965, 971 (Bankr. S.D. Tex. 1993) (finding no post-confirmation jurisdiction where "[t]he only nexus to [the] bankruptcy case [was] that the plaintiff . . . [was] a liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization").  RJL notes that Falise and Grimes, which both concerned litigation of a debtor's pre-petition non-bankruptcy claims, were cited with approval by the Third Circuit in Resorts.  Resorts, 372 F.3d at 168.  As such, RJL argues that the LGI Court "got it wrong" when it concluded it

had jurisdiction over pre-petition, non-bankruptcy claims brought
by the post-confirmation trustee.  See 322 B.R. at 103.

The Court is persuaded by the well-reasoned LGI opinion and
is not persuaded by RJL's reading of the other cases.  Resorts
decided the narrow issue of "related to" jurisdiction over a
claim that arose post-confirmation.  372 F.3d at 156.  Though it
cited Falice and Grimes as "useful for illustrating" the contours
of its "close nexus" criterion, it did not import their reasoning
wholesale.  See id. at 167-68.  Moreover, its holding that "the
potential to increase assets of the [post-confirmation] Trust and
its beneficiaries does not necessarily create a close nexus" to
the bankruptcy proceeding does not mean that a sufficiently close
nexus might not exist on different facts.  See id. at 170
(emphasis added).  Among other things, the Third Circuit pointed
to the post-confirmation nature of the dispute and its
unrelatedness to any provision of the chapter 11 plan in the
Resorts case as factors attenuating any nexus with the bankruptcy
proceeding.  See id. at 169-70.

Unlike the malpractice claim in Resorts, however, the claims
against RJL are not "an accidental happenstance arising first in
the operation of the [post-confirmation] Trust." LGI, 322 B.R.
at 103.  Nor are they, like the indemnification claim against the
tobacco manufacturers in Falise or the claim against the debtor's
former business partner in Grimes, "an independent afterthought

25

of the post-confirmation trustee." LGI, 322 B.R. at 106.

Rather, they are "both logically linked to the [D]ebtor's

prepetition losses, and entrusted to the [P]laintiff via the Plan

for the benefit of creditors." Id. at 104 (emphasis in

original).

    In this case, the Plan and Confirmation Order provide for

the retention of jurisdiction "[t]o enable the Debtor or the

[Plaintiff] . . . to prosecute and/or settle any and all

Litigation Claims . . . ." (Article 16 (l)).  Exhibit A to the

Plan defines "Litigation Claims" to include specifically

"[c]auses of action arising out of or in connection with the

Debtor's sale of stock in Xantrex Technology, Inc."  This element

was missing in Insilco, where the post-confirmation trustee

sought to bring prepetition actions that were not treated

specifically in the chapter 11 plan.  330 B.R. at 525 (noting

that "[i]f the litigation [were] truly so critical to the Plan's

implementation, it would have been more specifically described in

the Disclosure Statement and Plan so that creditors could have

considered its effect when deciding whether to vote in favor of

the Plan.")

    The Court concludes that where, as here, the Plan

specifically describes an action over which the Court had

"related to" jurisdiction pre-confirmation and expressly provides

for the retention of such jurisdiction to liquidate that claim

for the benefit of the estate's creditors, there is a
sufficiently close nexus with the bankruptcy proceeding to
support jurisdiction post-confirmation.  LGI, 322 B.R. at 102.
Under such circumstances, "bankruptcy court jurisdiction would
not raise the specter of 'unending jurisdiction' over continuing
trusts."  See Resorts, 372 F.3d at 167.

Consequently, the Court will deny RJL's motion to dismiss
for want of subject matter jurisdiction because it has "related
to" jurisdiction over the non-core claims in the Complaint.

    D.   Venue

        1.   Arbitration

Xantrex and Umedaly also seek to dismiss these proceedings
based on a clause in the Xantrex Shareholders' Agreement
requiring arbitration, in British Columbia, of any "dispute,
controversy or claim among or between any of the parties . . .
with respect to any matter arising out of or relating to [the
Shareholders' Agreement]."  Xantrex and Umedaly contend that the
Court has no discretion to deny the enforcement of an arbitration
clause with respect to non-core claims and therefore must dismiss
the non-bankruptcy counts of the Complaint against Xantrex and
Umedaly.  See Hays & Co. v. Merrill, Lynch, Pierce, Fenner &
Smith, Inc., 885 F.2d 1149, 1154 (3d Cir. 1989).

With respect to the core fraudulent transfer claims, Xantrex
and Umedaly argue that the Court has the discretion to submit

27

them to arbitration or to stay them pending arbitration of the
non-core claims.  See, e.g., EXDS, Inc. v. Ernst & Young LLP (In
re EXDS, Inc.), 316 B.R. 817, 826 (Bankr. D. Del. 2004) (staying
litigation of fraudulent transfer claims in favor of arbitration
of other claims because "the arbitration may contribute to the
resolution of the issues raised by the fraudulent conveyance
claims"); SFC New Holdings, Inc. v. Earthgrains Co. (In re GWI,
Inc.), 269 B.R. 114, 117 (Bankr. D. Del. 2001) ("Where a matter
is a core proceeding, it is left to the bankruptcy court's
discretion to decide whether to refer the matter to
arbitration.").

      a.   Dismissal

The Plaintiff contends that the arbitration clause is
largely irrelevant because only Count VII of the Complaint
implicates the Shareholders' Agreement.  The remaining non-
bankruptcy counts against Xantrex and Umedaly, the Plaintiff
argues, are premised upon a "special relationship of trust and
confidence" independent of the Shareholders' Agreement which was
formed when Umedaly offered to help the Debtor sell its Xantrex
stock.  The Plaintiff claims it brought these counts against
Xantrex and Umedaly in the alternative, because it was uncertain
whether Umedaly had been acting as an officer of Xantrex or in
his personal capacity when he communicated with the Debtor.  With
respect to the core fraudulent transfer actions, the Plaintiff

asserts they are not subject to arbitration clauses and the Court

does <u>not</u> have any discretion to submit them to arbitration.  <u>See</u>

<u>OHC Liquidation Trust v. American Bankers Ins. Co. (In re Oakwood</u>

<u>Homes Corp.)</u>, Adv. No. 04-56928 (PBL), 2005 Bankr. LEXIS 429,

*12-14 (Bankr. D. Del. March 18, 2005); <u>EXDS</u>, 316 B.R. at 826.

The Plaintiff urges the Court to adopt the reasoning of <u>Oakwood</u>

<u>Homes</u>:

> Neither [a section 544(b) nor a section 548
> fraudulent transfer action] may be brought by a
> debtor, and under no interpretation could any such
> action be described or construed as having been
> derived from the debtor.  They are creatures of
> statute, available in bankruptcy solely for the
> benefit of creditors of the debtor, whose rights
> the trustee enforces.  The arbitration agreement
> was entered into by Debtor, pre-petition, and as
> the courts have made clear, it is the parties to
> such an agreement who are bound by it and whose
> intentions must be carried out.  Thus it is the
> view of this Court that, under <u>Hays</u>, as extended
> by <u>EXDS</u>, this Court may not require fraudulent
> conveyance actions . . . to be submitted to
> arbitration.

2005 Bankr. LEXIS 429, at *13-14.

The Court agrees with the Plaintiff and the <u>Oakwood Homes</u>

Court that creditors may not be compelled indirectly through

their representative to arbitrate fraudulent transfer claims

pursuant to a pre-petition contract to which they were not

parties.

The Court disagrees with the Plaintiff, however, as to the

applicability of the arbitration provision to the other counts of

the Complaint.  The Debtor, Xantrex, and Umedaly were parties to

the Shareholders' Agreement.  According to the Complaint, the Debtor contacted Xantrex to get a copy of the Shareholders' Agreement and to seek advice about selling its stock in accordance with the ROFR procedure set forth therein.  Umedaly's alleged advice concerned the Shareholders' Agreement and the ROFR process.  The Court concludes that the counts of the Complaint premised on these allegations clearly "relate to" the Shareholders' Agreement so as to invoke the arbitration provision.

The Plaintiff's only argument against submitting the non-bankruptcy claims to arbitration is that litigating all claims in a single forum would be more efficient and would conserve estate resources for the benefit of creditors.  Nonetheless, enforcement of arbitration provisions as to non-core claims is mandatory, not discretionary.  See Hays, 885 F.2d at 1154.  Thus, the Court will dismiss Counts VI, VII, IX, XI and XII against Xantrex and Umedaly to effectuate their pre-petition agreement with the Debtor to arbitrate such claims.

b.    Stay Pending Arbitration

The Plaintiff has represented that it needs discovery to identify the undisclosed third-party buyer of the Debtor's stock so that it can amend its Complaint before the Bankruptcy Code's statute of limitations for fraudulent conveyance actions runs on February 1, 2006.  See 11 U.S.C. § 546(a)(1).  The arbitration

30

process has not yet begun and almost certainly would not be concluded by that time.  In light of this potential prejudice to the Plaintiff, the Court declines to stay litigation of the core claims at this time.  The Court is, however, open to reconsideration of this issue at a later date.

    2.   <u>Forum Selection</u>

RJL also moves to dismiss the Complaint for improper venue based upon a forum selection provision in the Engagement Letter that requires all disputes to be resolved in British Columbia. <u>See</u> Fed. R. Civ. P. 12(b)(3); <u>Lipcon v. Underwriters at Lloyd's</u>, 148 F.3d 1285, 1290 (11th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1093 (1999) (holding that a motion to dismiss based on a forum selection provision should be brought pursuant to Rule 12(b)(3)). Improper venue is an affirmative defense that must be proved by the movant.  <u>Myers v. American Dental Ass'n</u>, 695 F.2d 716, 724 (3d Cir. 1982).

The forum selection clause in the Engagement Letter provides:

> It is irrevocably agreed that the courts of the Province of British Columbia are to have exclusive jurisdiction to settle any disputes which may arise out of in [<u>sic</u>] or connection with this agreement and that, accordingly, any suit, action or proceeding arising out of or in connection with this agreement my [<u>sic</u>] be brought in such court.

RJL argues that this provision covers all the Plaintiff's claims against RJL because they arise either from an alleged breach of

31

the Engagement Letter itself or "in connection with" the alleged
fiduciary relationship created by the Engagement Letter.  RJL
argues that, because forum selection provisions are presumptively
valid, the burden shifts to the Plaintiff to prove that
enforcement of the clause would be unreasonable under the
circumstances.  See M/S Bremen v. Zapata Off-Shore Co., 407 U.S.
1, 10 (1972) (forum selection provisions are "prima facie valid
and should be enforced unless enforcement is shown by the
resisting party to be 'unreasonable' under the circumstances");
Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995)
("[T]he plaintiffs bear the burden of demonstrating why they
should not be bound by their contractual choice of forum.")

     The Plaintiff contends that the forum selection provision is
ambiguous and should be construed as permissive and not exclusive
of other venues.  See, e.g., BC Rail P'ship v. Standard Car Truck
Co., 12 B.C.L.R. (4th) 171, available at 2003 B.C.D. Civ. J.
LEXIS 24, at *17 (B.C.D. Civ. Ct. 2003) ("An ambiguous choice of
jurisdiction clause will not be construed to grant exclusive
jurisdiction.") (internal citations ommitted).  The alleged
ambiguity arises from the fact that one clause provides the
courts of British Columbia "are to have exclusive jurisdiction,"
while a latter clause merely permits, but does not require, that
disputes be resolved in those courts.

The Plaintiff's argument is without merit.  The word "accordingly" makes clear that the latter clause (whatever it means) flows from the former.  The Plaintiff's proposed reading would render the entire provision nonsensical, to wit: "It is . . . agreed that the courts of . . . British Columbia are to have exclusive jurisdiction to settle any disputes . . . and that, accordingly, [such disputes] may be brought [before courts outside of British Columbia]."  If a court has exclusive jurisdiction, it is axiomatic that disputes "may" be resolved before it.  That the contract uses "may" instead of "shall" in the latter clause is irrelevant under the circumstances.

The Plaintiff next argues that RJL may not avail itself of the forum selection provision because the Agency Agreement terminated upon RJL's offer to purchase the Debtor's Xantrex stock and was superseded by the proposed purchase agreement, which did not contain a forum selection provision.  RJL responds that the Plaintiff should not be allowed to pick and choose between the various provisions of the Agency Agreement and that, to the extent it wishes to hold RJL liable for breach of the Agency Agreement, the Plaintiff should have to proceed in the agreed-upon venue.

The Plaintiff responds that it is "hornbook law" that a party in material breach of a contract may not obtain specific performance of its provisions.  The Plaintiff argues that RJL

33

materially breached the Agency Agreement when it made its self-interested offers to purchase the Debtor's Xantrex stock and cannot now avail itself of the contractual venue provision.

The Court disagrees with the Plaintiff.  The Plaintiff cites no authority applying its "hornbook law" to preclude enforcement of a forum selection provision.  Indeed, forum selection provisions by their very nature contemplate breach by one or more of the parties to a contract.  As such, they must survive a breach if they are to have any effect at all.

Further, the Plaintiff's proposed rule would require determination of an ultimate fact of the case (namely, RJL's alleged breach of the Agency Agreement) in the context of a pre-trial venue motion.  The prima facie validity of forum selection provisions would mean little if defendants, in order to enforce them, had to establish ultimate success on the merits of the underlying action.  See M/S Bremen, 407 U.S. at 10 (holding that forum selection provisions are prima facie valid).

The Court is persuaded, however, that the forum selection provision cannot bar the fraudulent conveyance counts of the Plaintiff's Complaint from proceeding in this Court.  First, RJL's alleged liability on these theories arose, if at all, upon the Debtor's transfer of its Xantrex stock.  By that time, the objectives of the Agency Agreement were complete: RJL had found a buyer (i.e., itself) and had agreed to waive any commission on

34

the sale.  Though the forum selection provision survived RJL's purported breach of the Agency Agreement, it ceased to exist when that contract did and could no longer bind the Debtor or its assigns with respect to future causes of action.  See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 509 (2d Cir. 1998) (reasoning that "if no contract exists, the language of the forum-selection clause cannot logically deprive [a plaintiff] of its significant right of access to the courts of the United States"); Mobilificio San Giacomo S.p.A. v. Stoffi, 1998 U.S. Dist. LEXIS 3288, at *30 (D. Del. Jan. 29, 1998) ("A dispute which arises after expiration of the contract need not be submitted to arbitration.  Likewise, a forum selection clause in a contract terminates on the date that the contract is terminated.").

Second, the fraudulent transfer counts do not "arise out of or in connection with" the Agency Agreement but instead arise by operation of statute, irrespective of the existence or terms of any contract between the parties.  Oakwood Homes, 2005 Bankr. LEXIS 429, at *12-14.

Finally, fraudulent transfer actions are derivative in nature; the transferor's creditors are the real parties in interest.  Id.  As the representative of creditors who were not parties to the Agency Agreement, the Plaintiff is not bound by the forum selection provision with respect to these claims.  See

35

Hays, 885 F.2d at 1155 (reaching same conclusion with respect to contractual arbitration clause).

The Plaintiff argues finally that because the core fraudulent transfer claims must proceed in this Court, enforcement of the forum selection provision as to the non-core claims would be unreasonable in light of the policy of consolidating litigation in one forum.

The specter of litigation in separate fora, without more, cannot render enforcement of a forum selection clause "unreasonable." See M/S Bremen, 407 U.S. at 10.

> By enforcing the forum selection clause in non-
> core, related claims, where the public policy
> concerns are less clear, this Court also upholds
> the parties' right to contractually decide where
> to litigate their pre-petition contractual
> disputes. As a result, only those claims which
> are deemed to be core bankruptcy issues can remain
> in this Court; all non-core claims should be
> transferred or dismissed to give effect to the
> parties['] forum selection clause.

N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.), 221 B.R. 609, 622 (Bankr. D. Mass. 1998).

In light of the foregoing, the Court will deny RJL's request to dismiss the fraudulent transfer counts of the Complaint, but will dismiss Counts VI, VIII, X, XI, and XII against RJL for improper venue.

### 3.   Forum Non Conveniens

Xantrex and Umedaly move to dismiss the Complaint on the basis of forum non conveniens.  Federal courts, exercising their

discretion, may dismiss actions "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience or when the chosen forum [is] inappropriate because of . . . the court's own administrative and legal problems." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 42 (3d Cir. 1988) (quotations omitted) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).

In considering a motion to dismiss for forum non conveniens, the Court must first determine whether an adequate forum to resolve the dispute exists elsewhere. Id. at 43. An adequate alternative forum exists if the defendants are amenable to process in another jurisdiction and the alternative forum permits litigation of the disputed subject matter. See Lexington Ins. Co. v. Forrest, 263 F. Supp. 2d 986, 999 (E.D. Pa. 2003).

The Plaintiff argues that this Court is the only adequate forum because resolution of the instant dispute will require litigation of core fraudulent transfer claims. According to the Plaintiff, it would be difficult for a Canadian court to consider litigation on claims arising under the Bankruptcy Code generally, and specifically with respect to a bankruptcy case already pending in Delaware.

Xantrex and Umedaly aver generally that British Columbia provides an adequate alternative forum, but do not respond

37

directly to the Plaintiff's argument.  As movants, however,
Xantrex and Umedaly bear the burden of establishing their
entitlement to the relief requested.  Lacey, 862 F.2d at 43-44
("[T]he defendant bears the burden of persuasion as to all
elements of the forum non conveniens analysis.").  In light of
the Plaintiff's response, it was incumbent upon them to explain
why the courts of British Columbia are an adequate alternate
forum to adjudicate disputes involving core bankruptcy matters.
The Court cannot simply assume that this is so.

Because Xantrex and Umedaly failed to establish a threshold
requirement of the relief requested, the Court will deny their
request to dismiss for forum non conveniens.  See Bhatnagar by
Bhatnagar v. Surrendra Overseas, 52 F.3d 1220, 1230 (3d Cir.
1995) (affirming denial of motion to dismiss for forum non
conveniens where defendant "ha[d] not met its burden of proof" on
threshold issue of adequate alternate forum).

E.   Permissive Abstention

The Defendants request that this Court abstain from hearing
the remainder of the claims before it.[7]  See 28 U.S.C. §
1334(c)(1).  To determine whether permissive abstention is
appropriate, this Court weighs twelve factors:

---

[7]  It is unclear whether Xantrex and Umedaly seek abstention from
the entire dispute, or simply the non-core claims that are
subject to the arbitration clause.  For the sake of simplicity,
the Court assumes the former.

(1) the effect on the efficient administration of
the estate; (2) the extent to which state law
issues predominate over bankruptcy issues; (3) the
difficulty or unsettled nature of applicable state
law; (4) the presence of a related proceeding
commenced in state court or other non-bankruptcy
court; (5) the jurisdictional basis, if any, other
than section 1334; (6) the degree of relatedness
or remoteness of the proceeding to the main
bankruptcy case; (7) the substance rather than the
form of an asserted "core" proceeding; (8) the
feasibility of severing state law claims from core
bankruptcy matters to allow judgments to be
entered in state court with enforcement left to
the bankruptcy court; (9) the burden on the
court's docket; (10) the likelihood that the
commencement of the proceeding in bankruptcy court
involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence of non-debtor parties.

Great Am. Ins. Co. v. Mobile Tool Int'l, Inc. (In re Mobile Tool
Int'l), 320 B.R. 552, 556 (Bankr. D. Del. 2005).

The Defendants argue that the first factor, the effect on
the administration of the estate, and the sixth factor, the
degree of relatedness to the main bankruptcy case, weigh in favor
of abstention because the estate does not exist post-confirmation
and therefore will not be affected by resolution of this dispute.
Xantrex and Umedaly argue further that these claims could
probably be resolved quicker in a Canadian forum, resulting in
savings for creditors.  The Plaintiff argues that the first and
sixth factors do not favor abstention because this matter is
intrinsically connected to the Plan and its outcome could have a
significant impact on recovery by creditors.  See, e.g., LaRoche
Indus. v. Orica Nitrogen LLC (In re LaRoche Indus.), 312 B.R.

39

249, 254 (Bankr. D. Del. 2004) (finding that first factor favored abstention where resolution of the case would have <u>no</u> effect on creditors or their recovery).

The Court agrees with the Plaintiff.  As discussed previously, the instant litigation has a close nexus with the Plan, which assigned these specific claims to the Plaintiff for the benefit of creditors and envisioned prosecution of these claims in this forum.  <u>See</u> <u>supra</u> Part II. C. 2.

The second factor, the extent to which non-bankruptcy law predominates, and the third factor, the difficulty or unsettled nature of the applicable law, do not favor abstention.  Although they might favor abstention from the non-core claims to the extent that they deal with issues of Canadian law,[8] only core fraudulent transfer claims remain at this point.  The law of fraudulent transfers under the Bankruptcy Code falls squarely within this Court's area of expertise.

With respect to the fourth factor, the Defendants acknowledge that there is currently no related proceeding pending in any other court.  However, Xantrex and Umedaly have represented to the Court that if the Plaintiff does not initiate arbitration pursuant to the Shareholders' Agreement following

---

[8]  The Defendants claim that Canadian securities law provides a defense to the Plaintiff's claims for breach of agency and contract because it would have been illegal for the Defendants to share with the Plaintiff any non-public information about Xantrex's impending IPO.

this Court's dismissal of the non-core counts of the Complaint, they will do so.

According to the Plaintiff, the fact that there is no other proceeding <u>forecloses</u> abstention entirely.  <u>Security Farms v. International Bhd. of Teamsters</u>, 124 F.3d 999, 1009 (9th Cir. 1997) ("Abstention can exist only where there is a parallel proceeding in state court.  That is, inherent in the concept of abstention is the presence of a pendent state action in favor of which the federal court must, or may, abstain.").  Moreover, the Plaintiff argues, there is no other forum that would be <u>able</u> to adjudicate these core claims.  <u>See</u> <u>In re Cable & Wireless USA, Inc.</u>, 331 B.R. 568, 576 (Bankr. D. Del. June 24, 2005) ("The bottom line under 28 U.S.C. section 1334(c)(1) is simply that abstention is not legally available because no parallel state forum exists to decide the . . . issues.").

This Court has previously held that the absence of a related proceeding, while "a dispositive factor in <u>mandatory</u> abstention, . . . is only one factor . . . in considering <u>discretionary</u> abstention."  <u>Integrated Health Servs.</u>, 291 B.R. at 621 (emphasis added).  However, the Court agrees with the Plaintiff that the absence of a related proceeding here, and thus the fourth factor, weighs against abstention.

RJL argues that the fifth factor favors abstention because section 1334 provides the sole basis for bankruptcy court

jurisdiction over the fraudulent transfer claims.  See 28 U.S.C. §§ 1334(b); 157(b).

RJL is mistaken.  If bankruptcy jurisdiction were the issue, this factor would <u>always</u> favor abstention because bankruptcy courts can exercise no jurisdiction but what is provided by section 1334 and referred by the district court.  See 28 U.S.C. §§ 1334, 157.  The issue for abstention purposes is whether there is an independent basis for <u>federal</u> jurisdiction.  The Plaintiff correctly notes, and Xantrex and Umedaly concede, that the parties' diversity of citizenship provides an alternative basis for federal jurisdiction over the subject matter of this dispute. See 28 U.S.C. § 1332.  As such, the fifth factor does not favor abstention.

The Defendants argue that the seventh factor, the substance of the asserted "core" matters, favors abstention because the Plaintiff's fraudulent transfer claims are without merit insofar as they fail to allege any benefit received by the Defendants as a result of the Debtor's sale of the Xantrex stock.  The Plaintiff asserts that the core fraudulent transfer claims are the essence of its Complaint.

Given that only core matters remain before the Court, the Court agrees with the Plaintiff that the seventh factor does not favor abstention.  See <u>Mobile Tool</u>, 320 B.R. at 558 (finding that

seventh factor favored abstention where there was only "related to" jurisdiction over the plaintiff's claims).

The Court has already severed the non-core claims from the core claims by enforcing the applicable forum selection and arbitration provisions.  As such, the eighth factor does not favor abstention.

The burden on this Court's docket, while traditionally heavy, has been ameliorated by the addition of four new judges in this District.  Thus, the ninth factor does not favor abstention.

The Defendants argue that the tenth factor, the likelihood that bringing this action in bankruptcy court involved forum shopping by the Plaintiff, favors abstention because the Plaintiff brought this lawsuit in derogation of valid forum selection and arbitration provisions favoring Canadian fora.  The Court disagrees.  As discussed above, the core claims at issue here were not subject to the terms of the Debtor's pre-petition contracts.  See supra Part II. D. 1 & 2.  Bringing these claims before the Bankruptcy Court in which the main case is pending and pursuant to a Plan of Reorganization that expressly contemplated as much can hardly be considered forum shopping.  As such, the tenth factor does not favor abstention.

The eleventh factor, the existence of a right to a jury trial, is at best neutral.  Although the Plaintiff, Xantrex, and Umedaly have all requested a jury trial, such a trial may not

presently be held in the Bankruptcy Court in this District.
Nonetheless, withdrawal of the reference to the District Court is
a mechanism that has been used in the past to deal with jury
trial demands.

The Defendants argue that the twelfth factor, the presence
of non-debtor parties, favors abstention because all of the
parties to this proceeding are non-debtors.  The Plaintiff
counters that it is a "debtor party" because it is the post-
confirmation representative of the estate and because its
beneficiaries are the former creditors of the estate.  Because
there are both debtor and non-debtor parties, the Plaintiff
argues, this factor is at best neutral.  See Mobile Tool, 320
B.R. at 559.  The Court agrees with the Plaintiff.  The fact that
the Plaintiff is a distinct legal entity from the Debtor does not
change the fact that the estate's creditors are the real parties
in interest to this dispute.  Accordingly, the twelfth factor
does not favor abstention.

Finally, the Defendants note that the Mobile Tool factors
are not exclusive and ask that the Court consider "international
comity" as an additional factor favoring abstention.  Although it
recognizes that such a policy might favor abstention under other
circumstances, the Court does not believe that international
comity is implicated here.  Whether the transfer of the Debtor's
stock was constructively fraudulent as to its creditors will turn

on bankruptcy law and Delaware fraudulent transfer law.  Unlike
the non-core counts of the Complaint, liability for the
fraudulent transfer counts will be imposed, if at all, without
regard to the rights and duties of the Defendants under Canadian
securities law.  As such, the Court perceives no potential for
rendering a judgment that would threaten international comity.

Viewed holistically, the balance of the factors weighs
against permissive abstention.  Consequently, the Court will
exercise jurisdiction over the core claims of the Complaint.

F.   Failure to State a Claim

RJL also moves to dismiss the fraudulent transfer counts for
failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  When
ruling on a Rule 12(b)(6) motion, the Court must accept all well-
pleaded allegations as true and draw all reasonable inferences in
favor of the Plaintiff.  In re Rockefeller Ctr. Props. Secs.
Litig., 311 F.3d 198, 215 (3d Cir. 2002); Official Comm. of
Unsecured Creditors v. DVI Bus. Credit, Inc. (In re DVI, Inc.),
326 B.R. 301, 305 (Bankr. D. Del. 2005).  Dismissal is
appropriate only if it appears beyond doubt that the Plaintiff
can prove no set of facts in support of its claim that would
entitle it to relief.  Id.

1.   Pleading Standard

RJL argues that Rule 9(b)'s heightened pleading standard,
and not Rule 8(a)(2)'s notice pleading standard, governs the

45

Plaintiff's "fraud" claims.  See, e.g., OHC Liquidating Trust v.
Nucor Corp. (In re Oakwood Homes Corp.) ("Nucor"), 325 B.R. 696,
698 (Bankr. D. Del. 2005) ("There is no question that Rule 9(b)
applies to adversary proceedings in bankruptcy which include a
claim for relief under §§ 544 or 548, whether it is based upon
actual or constructive fraud.").

The Plaintiff contends that Rule 8(a)(2) applies and
requires merely a "short and plain statement of the claim that
will give the defendant fair notice of what the plaintiff's claim
is and the grounds upon which it rests."  DVI, 326 B.R. at 305-
06.

The Court agrees with the Plaintiff.  This Court has
explained previously that "[d]espite the similarity in the terms
'fraud' and 'fraudulent conveyance,' the pleading requirements
for fraud are not necessarily applicable to pleadings alleging a
fraudulent conveyance."  Global Link Liquidating Trust v.
Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711,
717-18 (Bankr. D. Del. 2005) (internal quotations and citations
omitted).  "[A] claim of constructive fraud need not allege the
common variety of deceit, misrepresentation or fraud in the
inducement.  This is because the transaction is presumptively
fraudulent and all that need be alleged is that the conveyance
was made without fair consideration while the debtor was
functionally insolvent."  Id. (emphasis added).  A complaint

46

alleging a constructively fraudulent conveyance need only "set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that [he] can prepare an adequate answer." Id. at 718 (internal quotation, citation omitted). See DVI, 326 B.R. at 305-06 (applying Rule 8(a)(2) notice pleading standard to motion to dismiss fraudulent transfer claim).

### 2. Sufficiency of Pleading

RJL argues nonetheless that the Complaint is deficient because nowhere is it alleged that the Debtor transferred the Xantrex stock to RJL. Rather, Counts I and II of the Complaint merely allege that the stock was sold (1) within one year prior to the petition date, (2) for less than reasonably equivalent value, (3) when the Debtor was insolvent (or causing the Debtor to become insolvent), and (4) "for the benefit of the Defendants." The Complaint alleges further that the sale "is avoidable pursuant to Bankruptcy Code section 548(b)(1)(B)" (Count I) and "[p]ursuant to 6 Del. § 1308, as made applicable pursuant to Bankruptcy Code section 544(b)(1)" (Count II). RJL contends that these are bald assertions that need not be accepted as true for purposes of the instant motion to dismiss. See, e.g., GMC v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001) (noting that deference to allegations in complaint "does not automatically extend to bald assertions, subjective

characterizations, or legal conclusions"). As such, RJL argues, the Complaint fails even a liberal pleading standard. See, e.g., Global Link, 327 B.R. at 718 (dismissing complaint that "merely allege[d] statutory elements of a constructive fraud action"); Nucor, 325 B.R. at 698-99 (dismissing complaint where plaintiff failed "to allege with specificity any facts in support of the fraudulent transfer claim").

The Court disagrees. The cases cited by RJL are inapposite. In those cases, the complaint merely attached a spreadsheet indicating the date and amount of each allegedly fraudulent transfer, without providing any information as to the value received by the Debtor in exchange or the Debtor's financial condition at the time of each transfer. Global Link, 327 B.R. at 718; Nucor, 325 B.R. at 687. In this case, Counts I and II, though they recite the statutory language, also incorporate by reference all 54 paragraphs of background allegations in the Complaint. These allegations specify in detail the date of the transfer, the amount of the consideration received, the alleged value of the stock on the date of the transfer, and the Debtor's financial condition at the time it made the transfer. Consequently, the Complaint states a valid claim that an avoidable transfer occurred.

RJL argues that, even if such a transfer occurred, the Plaintiff has not alleged sufficient facts to support recovery

48

against RJL.  According to RJL, the language of section 550 allowing recovery from an "entity for whose benefit such transfer was made" suggests that the relevant issue is the transferor's intent to benefit the defendant, not whether the transfer in fact benefitted the defendant.  See, e.g., Danning v. Miller (In re Bullion Reserve of N. Am.), 922 F.2d 544, 547 (9th Cir. 1991) ("It is not enough that an entity benefit from the transfer; the transfer must have been made for his benefit.") (emphasis in original).  Because nothing in the Complaint suggests that the Debtor intended to benefit RJL when it sold the Xantrex stock, RJL argues that the Complaint fails as a matter of law.

The Court rejects RJL's argument at this stage of the proceedings.  The Court in Official Committee of Unsecured Creditors of Buckhead America Corp. v. Reliance Capital Group (In re Buckhead America Corp.), 178 B.R. 956 (D. Del. 1994), also declined to address this precise issue in the context of a pre-trial motion to dismiss, stating: "The nature of the benefits defendants allegedly received in connection with the subject transactions and transfers, i.e., whether 'incidental' or 'intended,' are questions of fact which are not properly resolved at this stage of the proceedings."  Id. at 962 n.8.  If the Court is to rule on an issue of first impression in this jurisdiction, it would prefer to do so on a complete record rather than at the pleading stage.  See id. at 961 ("Novel theories of recovery are

49

best tested for legal sufficiency in light of actual, rather than alleged facts.").

RJL argues that, even if an incidental rather than intended benefit were sufficient, the Plaintiff's vague assertion that the Debtor's sale of the Xantrex stock benefitted RJL is belied by the more specific allegations in the Complaint: (1) that RJL had agreed to waive any commission from the sale of the Debtor's Xantrex stock; (2) that RJL never consummated its offer to purchase the stock because it was sold pursuant to the ROFR process; and (3) that the Debtor transferred the stock directly to Xantrex. See, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (dismissing complaint where the "attenuated allegations of control are contradicted . . . by more specific allegations").

The Court perceives no inconsistency. That RJL agreed to waive its commission does not foreclose the possibility that RJL benefitted from the sale in some other way. Nor does the fact that the Debtor transferred the stock to Xantrex without identifying (or knowing) the ultimate transferee. Indeed, nothing in the Complaint precludes the possibility that RJL actually received the stock, which is one conceivable set of facts upon which the Plaintiff would be entitled to the relief sought.

To dismiss the Complaint merely because it does not allege a specific benefit received by RJL would be inappropriate in light of the liberal pleading standard applicable to avoidance actions brought by estate representatives.  See, e.g., Global Link, 327 B.R. at 717 (noting that in bankruptcy it is often "a third party outsider to the fraudulent transaction . . . that must plead fraud on secondhand knowledge").  The Complaint pleads sufficient facts to apprise RJL of the nature of the charges against it and to enable RJL to prepare a meaningful answer.  Accordingly, the Court will deny RJL's request to dismiss for failure to state a claim.

III. CONCLUSION

For the reasons set forth above, the Court will dismiss Counts VI, VIII, X, XI, and XII of the Complaint against RJL for improper venue based upon the forum selection provision in the Engagement Letter.  The Court will dismiss Counts VI, VII, IX, XI and XII against Xantrex and Umedaly to enforce the arbitration provision of the Shareholders' Agreement.  The Court will deny the Defendants' motions as to the remainder of the relief sought, without prejudice to the rights of Xantrex and Umedaly to seek reconsideration of their request for a stay pending arbitration at a later date.  Finally, the Court will lift its prior Orders staying discovery in this case.

An appropriate order is attached.

BY THE COURT:

Dated: December 22, 2005          Mary F. Walrath
                                  United States Bankruptcy Judge