**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| ASTROPOWER LIQUIDATING | ) | Case No. 04-10322 (MFW) |
| TRUST, f/k/a ASTROPOWER, | ) | |
| INC., | ) | |
| Debtor. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| | ) | |
| ASTROPOWER LIQUIDATING | ) | |
| TRUST, f/k/a ASTROPOWER, | ) | |
| INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 05-50867 |
| | ) | |
| XANTREX TECHNOLOGY, INC.; | ) | |
| MOSSADIQ S. UMEDALY; RAYMOND | ) | |
| JAMES LTD.; MERRILL LYNCH | ) | |
| ASSET MANAGEMENT; and | ) | |
| MERRILL LYNCH INVESTMENT | ) | |
| MANAGERS LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of Merrill Lynch Asset
Management ("MLAM") and Merrill Lynch Investment Managers Limited
("MLIM") (collectively the "Merrill Lynch Defendants") to dismiss
the Amended Complaint filed by the AstroPower Liquidating Trust
(the "Plaintiff") for lack of personal jurisdiction.  For the
reasons set forth below, the Court will grant the Motion.

---

[1] This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

I.    BACKGROUND

The relevant background and procedural history are related in detail in the Court's December 22, 2005, Opinion.  <u>AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)</u>, 335 B.R. 309, 315-19 (Bankr. D. Del. 2005). In summary, the Plaintiff filed this adversary proceeding on behalf of the estate to recover, as a constructively fraudulent conveyance, stock in Xantrex Technology, Inc. ("Xantrex") which had been sold by AstroPower, Inc. (the "Debtor") shortly before it filed its bankruptcy petition on February 1, 2004.  In the Opinion, the Court granted in part, and denied in part, the Motion to dismiss filed by Raymond James Ltd. ("RJL") and Mossadiq S. Umedaly ("Umedaly").

Subsequently, the Plaintiff filed an Amended Complaint removing the counts dismissed by the Court in the Opinion and naming MLAM and MLIM, the alleged third-party purchasers of the Xantrex stock, as additional defendants.[2]  On May 17, 2006, the Merrill Lynch Defendants filed a Motion to dismiss the Amended Complaint for lack of personal jurisdiction.  The matter has been

---

[2]  The Plaintiff states that some of the documents obtained from Xantrex through discovery named MLAM instead of MLIM as the third-party purchaser of Debtor's Xantrex stock.  As a result, the Plaintiff named both MLIM and MLAM as additional defendants in the Amended Complaint.  The Merrill Lynch Defendants assert, however, that the actual purchasers of the Xantrex stock were Merrill Lynch New Energy Technology ("ML Net") and Merrill Lynch International Investment Funds New Energy Fund ("MLIIF New Energy").

briefed and is ripe for decision.


II.   <u>JURISDICTION</u>

The adversary proceeding is a core matter over which the
Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) &
(H).


III.  <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

The Merrill Lynch Defendants' Motion to dismiss is premised
on Rule 12(b)(2) of the Federal Rules of Civil Procedure, made
applicable by Rule 7012 of the Federal Rules of Bankruptcy
Procedure.  The issue presented by the Motion is whether the
Court can exercise personal jurisdiction over the Merrill Lynch
Defendants because they are not domiciled in the United States
and have had little if any contact with the United States.

In reviewing a motion to dismiss under Rule 12(b)(2), the
Court must "accept all of the plaintiff's allegations as true and
construe disputed facts in favor of the plaintiff." <u>Pinker v.
Roche Holdings, Ltd.</u>, 292 F.3d 361, 368 (3d Cir. 2002 ) (citation
omitted).  Once a defendant raises the defense of lack of
personal jurisdiction, however, the plaintiff bears the burden of
proving (by affidavit or other competent evidence) sufficient
contacts with the forum to establish personal jurisdiction.  <u>See,</u>

e.g., North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984); TWA, Inc., Post Confirmation Estate v. Greater Toronto Airports Auth. (In re Trans World Airlines), Adv. No. 03-70129, 2003 WL 21087970, at *5 (Bankr. D. Del. May 6, 2003).

> Where personal jurisdiction is challenged in a motion to dismiss, the plaintiff must do more than submit written materials that create issues of material fact. The plaintiff has a prima facie burden of demonstrating that each defendant possesses contacts with the forum sufficient to give the court in personam jurisdiction.

Harman Auto, Inc. v. Barrincorp Indus., Inc. (In re Harvard Indus., Inc.), 173 B.R. 82, 85 (Bankr. D. Del. 1994) (citations omitted).

The Plaintiff disagrees and asserts that it must only allege a prima facie case that "minimum contacts" exist; the burden then shifts to the Merrill Lynch Defendants to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993).

The Court concludes that the Plaintiff is wrong in the legal standard to be applied. The overwhelming authority in the Third Circuit establishes that the Plaintiff has a burden of proving, by concrete evidence and not merely the allegations in its complaint, that the Merrill Lynch Defendants have the minimum contacts necessary to establish personal jurisdiction. See,

e.g., North Penn Gas, 897 F.2d at 689 (holding that "[o]nce a
defendant has properly raised a jurisdictional defense, the
plaintiff must demonstrate sufficient contacts with the forum
state to establish in personam jurisdiction. . . .  The plaintiff
must sustain its burden of proof through 'sworn affidavits or
other competent evidence'." ); Time Share, 735 F.2d at 66 n.9
(distinguishing Rule 12(b)(2) motion from Rule 12(b)(6) motion
and concluding that in the former the plaintiff could not rely on
mere allegations of complaint but had burden of proving through
competent evidence that personal jurisdiction existed); TWA,
Inc., 2003 WL 21087970, at *2 (holding that plaintiff "bears the
burden of showing that [the defendant] has sufficient minimum
contacts with the forum, in this case the United States as a
whole, to permit the exercise of either specific or general
personal jurisdiction over [the defendant]."). The case cited by
the Plaintiff is not to the contrary.  Grand Entm't Group, 988
F.2d at 483 (holding that burden shifts to defendant only after
plaintiff has made out a prima facie case of the minimum contacts
sufficient to establish personal jurisdiction).

In this case, the Merrill Lynch Defendants have asserted
that the Court lacks personal jurisdiction over them and have
presented affidavits to support their contention.  Specifically,
the Merrill Lynch Defendants presented declarations establishing
that MLIM is an English company whose registered office is in

London, England.  ML Net is traded on the London Stock Exchange and is a UK investment trust managed by MLIM.  Merrill Lynch International Investment Funds ("MLIIF") is incorporated in Luxembourg.  MLIIF New Energy is listed on the Luxembourg Stock Exchange and is one of the funds under the MLIIF umbrella.  MLIM serves as the investment advisor for MLIIF New Energy.  The Merrill Lynch entities are not registered to do business in the United States and have not filed a proof of claim in the Debtor's bankruptcy case.

In response, the Plaintiff presented no evidence (by declaration or otherwise) contesting these facts.  Nor does the Amended Complaint contain any allegations that contradict the facts set forth in the Merrill Lynch Defendants' affidavits. Consequently for purposes of this motion the Court accepts as fact the matters set forth in the Merrill Lynch Defendants' declarations.  See, e.g., Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53, 58-59 (3d Cir. 1986) (holding that once a defendant raises the defense of lack of personal jurisdiction, the plaintiff may no longer rest upon the allegations in its complaint but must present actual proof of minimum contacts sufficient to establish personal jurisdiction in order to sustain its burden of proof).

B.   <u>Lack of Personal Jurisdiction</u>

The Merrill Lynch Defendants argue that they have insufficient contacts with the forum for this Court to exercise personal jurisdiction over them.  <u>See, e.g.</u>, <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985) (personal jurisdiction may be exercised over a non-resident defendant only if the defendant has "purposefully established 'minimum contacts' in the forum") (citation omitted); <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (the defendant's contacts with the forum must be "such that he should reasonably anticipate being haled into court there"); <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) ("due process requires only that . . . [the defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'.") (citations omitted).

In bankruptcy cases the forum is the United States in general, not the particular forum state.  <u>See, e.g.</u>, <u>Klingher v. Salci (In re Tandycrafts, Inc.)</u>, 317 B.R. 287, 289 (Bankr. D. Del. 2004).  <u>See also</u> Fed. R. Bankr. P. 7004.  Therefore, the Merrill Lynch Defendants must have minimum contacts with the United States for this Court to exercise personal jurisdiction over them.

A non-resident defendant's contacts with the forum may give rise to either "specific" or "general" in personam jurisdiction. A court may exercise specific jurisdiction over a non-resident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King, 471 U.S. at 472 (citations omitted). A court may exercise general jurisdiction over a non-resident defendant where the defendant's activities within the forum are of such a continuous and systematic, though limited, nature that the defendant could reasonably anticipate being subject to jurisdiction there even if the litigation does not arise from or relate to those activities. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

    1.   Specific Jurisdiction

The Merrill Lynch Defendants assert that the requirements for exercise of specific jurisdiction are not met here because the Plaintiff's cause of action does not arise from actions of the Merrill Lynch Defendants' forum-related activities and their activities did not rise to the level of minimum contacts required by International Shoe. 326 U.S. at 316. Specifically, they assert that they directed no activities to the Debtor at all and merely responded to the offer made by the Debtor to sell its

Xantrex stock.  See, e.g., Mellon Bank (East) PSFS, N.A. v.
DiVeronica Bros., Inc., 983 F.2d 551, 554-55 (3d Cir. 1993)
(concluding no personal jurisdiction attached where defendant
deposited checks drawn on bank from forum state, submitted a
claim on a bond issued by a company in the forum state, and had
its contract assigned to a bank in the forum state).

The Plaintiff responds that the Court may exercise specific
jurisdiction over the Merrill Lynch Defendants, just as it did
over RJL and Umedaly earlier in this proceeding.  AstroPower, 335
B.R. at 319.  Citing the Court's earlier Opinion, the Plaintiff
argues that all a plaintiff must do to establish a prima facie
case for specific jurisdiction is allege intentional conduct and
a resulting injury.  See, e.g., Calder v. Jones, 465 U.S. 783,
789-91 (1984) (holding that the defendant's activity need not
take place within the forum so long as it is "intentional conduct
in [the forum] calculated to cause injury" to the plaintiff
within the forum as opposed to "mere untargeted negligence").
Id.  The Plaintiff contends that the Amended Complaint does
allege intentional conduct (the purchase of the Debtor's Xantrex
stock) and a resulting injury (the loss to the Debtor's
creditors).  Consequently, the Plaintiff claims it has
established a prima facie case for the Court's exercise of
specific jurisdiction over the Merrill Lynch Defendants.

The Merrill Lynch Defendants argue that the <u>Calder</u> case is inapplicable because that case dealt with a tort claim.  The Third Circuit established the following three-prong test to determine whether <u>Calder</u> applies:

> First, the defendant must have committed <u>an intentional tort</u>.  Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort.  Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

<u>Imo Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 256 (3d Cir. 1998) (emphasis added).

The Merrill Lynch Defendants assert that the constructively fraudulent transfers alleged in the Amended Complaint do not satisfy the first and second prongs of the <u>Imo</u> test because constructively fraudulent transfers are not torts.  <u>See, e.g.</u>, <u>U.S. v. Neidorf</u>, 522 F.2d 916, 918 (9th Cir. 1975); <u>Desmond v. Moffie</u>, 375 F.2d 742, 743 (1st Cir. 1967); <u>FDIC v. S. Prawer & Co.</u>, 829 F. Supp. 453, 455-56 (D. Me. 1993); <u>United States v. Franklin Nat'l Bank</u>, 376 F. Supp. 378, 381-83 (E.D.N.Y. 1973).  Further, the Merrill Lynch Defendants contend that none of the Merrill Lynch entities expressly aimed or targeted any conduct at the Debtor in the United States; thus their actions fail the third prong of the <u>Imo</u> test.  155 F.3d at 256.

The Court agrees with the Merrill Lynch Defendants.  In its December 22, 2005, Opinion, the Court concluded that it had

10

personal jurisdiction over RJL and Umedaly based on the claims
stated against them in the Original Complaint.  That Complaint
included, in addition to the constructively fraudulent transfer
counts, counts against RJL and Umedaly alleging intentional
breach of fiduciary duty, which is a tort.  <u>See</u> Restatement
(Second) of Torts § 874 cmt. b (1979) ("A fiduciary who commits a
breach of his duty as a fiduciary is guilty of tortious conduct
to the person for whom he should act.").  <u>See also</u>, <u>Schur v.
Porter</u>, 712 F. Supp. 1140, 1146 (S.D.N.Y. 1989) (finding that
breach of fiduciary duty is a tort for the purpose of determining
personal jurisdiction).  Those counts, therefore, provided
sufficient basis for the Court's exercise of specific
jurisdiction over RJL and Umedaly.  <u>See, e.g.</u>, <u>Wien Air Alaska,
Inc. v. Brandt</u>, 195 F.3d 208, 215 (5th Cir. 1999) (concluding
court had personal jurisdiction over German with respect to
breach of contract claim where minimum contacts were established
with respect to claims for fraud, fraudulent inducement, and
breach of fiduciary duty).

The claims against the Merrill Lynch Defendants, in
contrast, are only for recovery of a constructively fraudulent
transfer, which is not a tort but a contract claim.  <u>See, e.g.</u>,
<u>Neidorf</u>, 522 F.2d at 918; <u>Desmond</u>, 375 F.2d at 743; <u>Prawer</u>, 829
F. Supp. at 455-56; <u>Franklin Nat'l</u>, 376 F. Supp. at 381-83.
Therefore, the <u>Calder</u> and <u>Imo</u> cases are not applicable.  Rather,

11

the Court must determine whether it has personal jurisdiction
over the Merrill Lynch Defendants by considering what minimum
contacts are necessary in breach of contract cases.  See, e.g.,
Burger King, 471 U.S at 469-70; DiVeronica, 983 F.2d at 552;
Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1222 (3d
Cir. 1992) ("Because this case involved contracts among
interstate parties, we are primarily directed in our analysis by
the Court's opinion in Burger King.").

The Plaintiff argues that, even under the analysis of the
above cases, personal jurisdiction is present because the Merrill
Lynch Defendants availed themselves of the jurisdiction of this
Court by intentionally acting to purchase stock from the Debtor.
See, e.g., Burger King, 471 U.S at 474; International Shoe, 326
U.S. at 316.  The Plaintiff argues that minimum contacts need not
include the Merrill Lynch Defendants' physical presence in the
forum so long as they purposely directed their activities at a
resident of the forum.  See, e.g., Farino, 960 F.2d at 1224
(finding personal jurisdiction where defendant sought and
obtained loan from bank in forum state).

While the Plaintiff is correct that the Merrill Lynch
Defendants did not have to commit a tort or be physically present
in the United States for personal jurisdiction to attach, the
Court concludes that the Plaintiff has failed to establish that
the Merrill Lynch Defendants had minimum contacts with the United

12

States sufficient for specific jurisdiction to attach.  The only

contact that the Plaintiff alleges between the Merrill Lynch

Defendants and the Debtor is the Merrill Lynch Defendants'

purchase of the Xantrex stock owned by the Debtor.  This alone is

insufficient.  Burger King, 471 U.S. at 478 ("If the question is

whether an individual's contract with an out-of-state party alone

can automatically establish sufficient minimum contacts in the

other party's home forum, we believe the answer clearly is that

it cannot.") (emphasis in original).

Rather the test is whether there is "some act by which the

defendant purposefully avails itself of the privilege of

conducting activities with the State."  Hanson v. Denckla, 357

U.S. 235, 253 (1958).  As the Court articulated in Burger King:

> [I]t is essential in each case that there be some act
> by which the defendant purposefully avails itself of
> the privilege of conducting activities within the forum
> State, thus invoking the benefits and protections of
> its laws. . . . Jurisdiction is proper, however, where
> the contacts proximately result from actions by the
> defendant himself that create a "substantial
> connection" with the forum . . . .  Thus, where the
> defendant "deliberately" has engaged in significant
> activities within a State . . . or has created
> "continuing obligations" between himself and residents
> of the forum . . . he manifestly has availed himself of
> the privilege of conducting business there, and because
> his activities are shielded by "the benefits and
> protections" of the forum's laws it is presumptively
> not unreasonable to require him to submit to the
> burdens of litigation in the forum as well.

471 U.S. at 475-76 (internal citations omitted; emphasis in

original).

13

In the Burger King case, the Supreme Court found that the
defendant had sufficient minimum contacts with the plaintiff's
state not simply because he had entered into a contract with the
plaintiff but because he had "deliberately 'reach[ed] out beyond'
Michigan and negotiated with a Florida corporation for the
purchase of a long-term franchise and the manifold benefits that
would derive from affiliation with a nationwide organization."
Id. at 479-80.   Further, the Burger King Court stated that
"prior negotiations and contemplated future consequences, along
with the terms of the contract and the parties' actual course of
dealing [are factors] that must be evaluated in determining
whether the defendant purposefully established minimum contacts
within the forum."  Id. at 479.

In this case, the Merrill Lynch Defendants did not reach out
to the Debtor; instead it was the Debtors (through Xantrex) who
deliberately reached out beyond the United States and contracted
with the Merrill Lynch Defendants.  Further, there were no
negotiations between the Merrill Lynch Defendants and the Debtor;
negotiations, if any, were conducted by Xantrex, a Canadian
company.  Nor is there any allegation by the Plaintiff that the
Debtor had any other contact with the Merrill Lynch Defendants.
In fact, the Debtor apparently had no knowledge that the Merrill
Lynch Defendants had purchased the stock; at Xantrex's direction,
the Debtor sent a blank endorsement of the stock to Xantrex.

14

Further, there is no evidence that the contract for sale of the stock contains anything to suggest the Merrill Lynch Defendants purposefully established minimum contacts with the United States.

This case is, therefore, more analogous to the DiVeronica case than the Burger King case.  In DiVeronica, the plaintiff's assignor and the defendant, both located in New York, entered into a contract which was subsequently assigned to the plaintiff, a Pennsylvania bank.  983 F.2d at 554-55.  The Third Circuit concluded that the defendant had not purposely availed itself of the jurisdiction of the Pennsylvania courts.  "DiVeronica did not choose to deal with [the plaintiff]; as noted, it had no involvement in the choice of [the plaintiff] as lender or in the subsequent assignment of the accounts receivable. . . .  Under these circumstances, we find that this is not a close call."  Id. at 557-58.  As a result, the Third Circuit concluded that there was no personal jurisdiction over the defendant.  Id.

Because the Court finds that the Merrill Lynch Defendants did not purposely avail themselves of any business dealings in the United States or specifically direct any action to the Debtor in the United States, the Court concludes it cannot exercise specific jurisdiction over the Merrill Lynch Defendants.

     2.   General Jurisdiction

The Merrill Lynch Defendants also argue that the Court cannot exercise general jurisdiction over them because, other

than the alleged fraudulent transfer, they have no contacts whatsoever with the United States.  See, e.g., Helicopteros, 466 U.S. at 411-16 (finding contacts insufficient to exercise general jurisdiction even though defendant had sent representative to forum state to negotiate contract, purchased eighty percent of its helicopter fleet and parts from the forum state, and had sent employees to the forum state for training); Surgical Laser Tech., Inc. v. C.R. Bard, Inc., 921 F. Supp. 281, 284 (E.D. Pa. 1996) (recognizing that general jurisdiction is not an easy test to meet).

In this case, the Merrill Lynch Defendants' affidavit establishes that they are foreign entities, that they are separate and distinct from Merrill Lynch's United States entities, and that they are not registered to conduct business in the United States.  Consequently, the Merrill Lynch Defendants assert that they do not have the continuous and systematic contacts with the United States required for the Court to exercise general jurisdiction over them.

The Plaintiff responds that the Court "should have" general jurisdiction over the Merrill Lynch Defendants, but it provides no evidence or legal authority to support its position. Furthermore, there are no allegations in the Complaint that the Merrill Lynch Defendants have had continuous and systematic contacts with the United States.  Nor did the Plaintiff present

any affidavits or other evidence that the Merrill Lynch
Defendants have had such contacts.

     Therefore, there is nothing in the record to establish that
the Merrill Lynch Defendants have the continuous and systematic
contacts with the United States required for the Court to
exercise general jurisdiction over them.  Consequently, the Court
concludes that it does not have general jurisdiction over the
Merrill Lynch Defendants.

     C.   Jurisdictional Discovery

     The Plaintiff argues that the Court should permit discovery
to allow the Plaintiff to establish a basis for the Court's
general jurisdiction over the Merrill Lynch Defendants.  The
Plaintiff asserts that "[i]t is within the court's discretion to
permit discovery when jurisdictional facts are disputed."  Trans
World Airlines, 2003 WL 21087970, at *2.  Further, the Court
should "assist the plaintiff by allowing jurisdictional discovery
unless the plaintiff's claim is 'clearly frivolous' . . . [and so
long as the] plaintiff presents factual allegations that suggest
'with reasonable particularity' the possible existence of the
requisite 'contacts between [the party] and the forum'."  Toys
"R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)
(citations omitted).  The Plaintiff argues that, given the
discrepancies between the affidavits submitted by the Merrill
Lynch Defendants and the discovery obtained from Xantrex,

17

contradictions exist regarding the Merrill Lynch Defendants' role in the alleged constructively fraudulent transfer.  Accordingly, the Plaintiff argues the Court should grant further discovery until those contradictions can be clarified.

The Merrill Lynch Defendants respond that the Plaintiff has failed to meet the Third Circuit's standard for granting jurisdictional discovery under <u>Toys "R" Us</u>.  The Merrill Lynch Defendants note that the only contact the Plaintiff alleges exists between them and the United States is the constructively fraudulent transfer.  The Merrill Lynch Defendants argue that this constructively fraudulent transfer allegation alone is not sufficient to suggest with reasonable particularity the existence of continuous and systematic contacts with the United States. Therefore, the Court should not grant the Plaintiff further discovery to establish general jurisdiction.

The Court agrees with the Merrill Lynch Defendants.  The <u>Toys "R" Us</u> case is distinguishable from this case.  In <u>Toys "R" Us</u> the Court was faced with determining whether the lower court had personal jurisdiction over an internet company.  318 F.3d at 448.  In its analysis, the Court acknowledged that internet companies are unique: "The advent of the Internet has required courts to fashion guidelines for when personal jurisdiction can be based on a defendant's operation of a web site.  Courts have sought to articulate a standard that both embodies traditional

18

rules and accounts for new factual scenarios created by the Internet." Id. at 451. Because the Court found that personal jurisdiction over internet companies required a determination that the company had targeted a specific state with its web site, and that that information was solely within the defendant's knowledge, it determined that discovery was necessary. Id. at 454-55. The Court finds Toys "R" Us sufficiently distinguishable and will not apply it to this case.

Applying traditional standards, the Court concludes that discovery is not warranted in this case. Based on the allegations in the Amended Complaint and the record before the Court, there is no reasonable basis to conclude that continuous and systematic contacts may exist between the Merrill Lynch Defendants and the United States. Accordingly, the Court will not grant the Plaintiff further discovery to establish general jurisdiction.

D.    Request for Leave to Amend

As a final matter, the Plaintiff, in its brief, requests leave to amend its complaint to add as additional defendants the actual purchasers of the Xantrex stock. The Merrill Lynch Defendants respond that any amendment would be futile because none of the Merrill Lynch entities involved in the purchase of the Xantrex stock has any contacts with the United States.

19

The Court agrees with the Merrill Lynch Defendants.  While leave to amend a complaint should be freely granted, such relief should be denied where the amendment would be futile.  Fed. R. Civ. P. 15(a); Fed. R. Bankr. P. 7015.  Cf., Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that denial of motion to amend for no reason was abuse of discretion); CHEP USA v. Fleming Cos. (In re Fleming Cos.), 319 B.R. 359, 361 (Bankr. D. Del. 2005) (granting motion to amend as not futile where fraud allegation was pleaded with sufficient particularity in proposed amended complaint).

An amendment is futile, however, where the complaint as amended would be subject to dismissal.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (noting that if a claim is based on facts that provide no basis for the granting of relief by the court, the claim must be dismissed).

The Court's analysis of personal jurisdiction with respect to the Merrill Lynch Defendants is equally applicable to the Merrill Lynch entities that actually purchased the Xantrex stock. According to the affidavits submitted by the Merrill Lynch Defendants, the actual purchasers of the stock were ML Net and MLIIF New Energy.  ML Net is traded on the London Stock Exchange and is a UK investment trust managed by MLIM.  MLIIF New Energy is listed on the Luxembourg Stock Exchange and is one of the funds under MLIIF, which is registered in Luxembourg.  None of

20

the Merrill Lynch entities are registered to do business in the United States.  None of the Merrill Lynch entities solicited the Debtor for the purchase of the Xantrex stock; rather, it was they who were solicited by the Debtor (through Xantrex).  There is nothing in the Amended Complaint from which the Court can conclude that the Merrill Lynch entities have the minimum contacts with the United States necessary for personal jurisdiction to attach.  Therefore, any amendment to name the Merrill Lynch entities would be futile and will be denied.

IV.  <u>CONCLUSION</u>

　　　For the reasons set forth above, the Court will grant the Merrill Lynch Defendants' Motion to dismiss for lack of personal jurisdiction.

　　　An appropriate Order is attached.

Dated: October 2, 2006　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　Mary F. Walrath
　　　　　　　　　　　　　　　　United States Bankruptcy Judge